UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MARK BURGESS PLAINTIFF

v. CIVIL ACTION NO. 4:13-cv-45-CWR-FKB

DR. MICHAEL REDDIX, et al. DEFENDANTS

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to the Motion for Summary Judgment filed by Defendants Epps and Petrie [Docket No. 32], the Motion to Dismiss filed by Defendant Birdtail [Docket No. 45], and the Motion for Summary Judgment filed by Defendants Faulks, Little, and Reddix [Docket No. 47], as well as for a ruling on Plaintiff's Motion for Leave to File a Fourth Amended Complaint [Docket No. 42], a Motion to Strike Plaintiff's Request for Production of Documents filed by Defendants Faulks, Little, and Reddix [Docket No. 50], Plaintiff's Request for Docket [Docket No. 52] and Plaintiff's Motion for Leave to File a Fifth Amended Complaint [Docket No. 54]. Having considered the parties' filings with respect to these motions, the undersigned recommends that all Defendants be granted judgment in their favor and that the Complaint be dismissed. Plaintiff's Motions for Leave to Amend [Docket Nos. 42, 54] are denied, as is Plaintiff's Request for Docket [Docket No. 52], and Defendants' Motion to Strike [Docket No. 50] is granted.

HISTORY

Plaintiff is currently incarcerated at the East Mississippi Correctional Facility in Meridian, Mississippi. He filed suit on November 6, 2012, in the Circuit Court of Lauderdale County, Mississippi, against Defendants M. Reddix, Faulks, Epps and Petrie. Plaintiff initially

alleged that Defendant Petrie, the Legal Claims Adjudicator for the Mississippi Department of Corrections ("MDOC"), violated his constitutional rights by not following the MDOC's Administrative Remedy Program (hereinafter "ARP" or "grievance procedure") and that Defendant Epps, MDOC Commissioner, knew that Plaintiff was suffering violations of his First, Eighth, and Fourteenth Amendments rights, yet failed to act. Docket No. 1-1. Plaintiff alleged that Defendant Faulks and Defendant Michael Reddix, both prison medical providers, denied Plaintiff the proper doses of pain medication. Plaintiff alleged that Dr. Faulks also denied his requests to see a specialist. *Id.*

Defendants removed the action to this Court [Docket No. 1] based on federal question jurisdiction because the claims arise pursuant to 42 U.S.C. § 1983. The undersigned held an omnibus hearing[1] on March 28, 2013. At the omnibus hearing, Plaintiff testified that Defendant Birdtail was the ARP Coordinator and one of the persons responsible for denying him an adequate grievance procedure. Docket No. 45-1 at 33. Plaintiff testified that Defendant Little is the facility health services director and that Defendant Carl Reddix is the CEO of the private company that managed the facility's healthcare. Docket No. 45-1 at 31. The Court allowed Plaintiff to amend his complaint to add Defendants Birdtail, Little and C. Reddix. Docket No. 23.

With respect to his complaint, Plaintiff testified during the omnibus hearing that he had been on 3200 milligrams of Neurontin at one point during his incarceration, which alleviated his chronic nerve pain. However, Defendant Faulks reduced the dosage to 1600 milligrams of

---

[1]The Court held what is known as an omnibus or "Spears Hearing" to insure Plaintiff had every opportunity to fully explain his claim against Defendants. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)(*overruled on other grounds, Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

Neurontin, which did not completely relieve his pain. Plaintiff claims that Defendant M. Reddix treated him in August 2012, and also prescribed only 1600 milligrams of Neurontin. Plaintiff contends that when Defendant Faulks resumed treating him in October 2012, Dr. Faulks prescribed 1600 milligrams of ibuprofen a day instead of Neurontin. Docket No. 45-1 at 12-16. According to Plaintiff, after three months of ibuprofen only, in January 2013, he was given 300 milligrams of Neurontin a day, though a Dr. McShan had agreed to prescribe 1600 milligrams of Neurontin a day. *Id.* at 18. Additionally, Plaintiff testified that there were delays between his prescriptions being written and his receipt of medication.

## THE MOTIONS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir.1987). "[T]he requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)(emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Moreover, the Fifth Circuit has consistently held that "[b]are bones allegations are insufficient to withstand summary judgment because the party opposing summary judgment 'must counter

factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir.1986) (quoting *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co. Inc.*, 695 F.2d 839, 845 (5th Cir.1983)).

B. DEFENDANTS PETRIE AND EPPS

1. Eleventh Amendment Immunity

Monetary damage claims against state officials in their official capacities are barred by the Eleventh Amendment. *See, e.g., Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). Accordingly, to the extent Plaintiff has sued Defendants Epps and Petrie in their official capacities for monetary damages, those claims must be dismissed.

State officials may be sued in their official capacities for prospective injunctive relief. *See, e.g., Ex parte Young*, 209 U.S. 123 (1908). Plaintiff seeks injunctive relief against Defendants Epps and Petrie, urging the Court to require them to comply with the grievance procedure, to prohibit them from transferring Plaintiff because of his lawsuit and to require Defendants to pay his filing fee. Docket No. 1-1at 11. Even if these remedies are within this Court's purview, Plaintiff has failed to meet any of the requirements for injunctive relief. As discussed herein, he has failed to establish a substantial likelihood of success on the merits, a substantial threat of irreparable harm absent injunctive relief, that the threat outweighs harm the defendants may suffer and that the injunction will not disserve the public interest. *See, e.g., Enrique Bernat F., S.A. v. Quadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000).

2. Qualified Immunity

When sued under Section 1983, government officials sued in their individual capacities are entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once a defendant has raised the issue of qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Plaintiff must show that 1) there has been a violation of a constitutional right, and 2) that right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Additionally, with respect to these supervisory defendants, Plaintiff cannot prevail merely because they were in positions of authority at the facility in which he is housed. *See, e.g.*, *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Rather, Plaintiff "must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996).

Supervisory liability may be established without direct involvement in the alleged constitutional violation "if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987)(internal quotations and citations omitted). An official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] or by an official to whom the [entity] ha[s] delegated policy-making authority; or
>
> 2. A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is

> so common and well settled as to constitute a custom that fairly represents [the entity's] policy. ....

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).

The right to adequate medical care during incarceration is a clearly established constitutional right. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, though Plaintiff alleged in his complaint that the defendants were deliberately indifferent to his serious medical needs, which is the appropriate standard, he has failed to allege any facts to support such a claim with respect to his medical treatment against these two defendants. Plaintiff has not demonstrated that there was a particular institution-wide policy implemented by either of these defendants which deprived him of medical care. Nor has Plaintiff demonstrated any personal involvement in the alleged denial of medical care by either of these two defendants.

Plaintiff must show both that these defendants were aware of facts from which an inference could be drawn that he faced a substantial risk of serious harm, and that they drew that inference. *See, e.g., Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Plaintiff has failed to do either. Presumably these defendants were to have gleaned information regarding Plaintiff's allegedly inadequate medical care from the many grievances he filed regarding his medical care–grievances he claims these two defendants failed to address. However, the record reflects, as will be detailed *infra*, and Plaintiff admits, that Plaintiff was given medical treatment, just not as often or exactly the type he wanted. Failed medical treatment, negligence, neglect, nor medical malpractice give rise to a claim under § 1983. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Plaintiff's allegations against Defendants Epps and Petrie are not sufficient to survive the motion for summary judgment.

C.     DEFENDANT CARL REDDIX

Plaintiff's only claim against Defendant Carl Reddix is that he is the Chief Executive Officer of Health Assurance LLC,[2] the company responsible for providing medical services to the inmates at the facility in which Plaintiff is incarcerated. This defendant has never treated Plaintiff or been involved with Plaintiff's medical treatment. Docket No. 47-6. As was the case with Defendants Epps and Petrie, Plaintiff has failed to show that Defendant Carl Reddix was deliberately indifferent to, or even aware of, Plaintiff's serious medical needs. Nor has Plaintiff referenced any policy implemented by Defendant C. Reddix which is to blame for his alleged deprivation of rights such that a claim might exist against Defendant Carl Reddix in his official capacity. Dr. Carl Reddix is entitled to judgment in his favor.

D.     DEFENDANT OLLIE LITTLE

Defendant Little is a nurse and also Health Services Administrator for the medical department of the facility in which Plaintiff is incarcerated. Docket No. 47-7. This defendant has never treated Plaintiff. Plaintiff has failed to show that Defendant Little was deliberately indifferent to his serious medical needs or responsible in his official capacity for any policy that harmed Plaintiff. In fact, grievance response forms submitted by Defendants in support of their motion reveal that Defendant Little responded to Plaintiff's requests for medical attention by assuring Plaintiff that he would be treated. Docket No. 47-7 at 4-5. The record reflects, *see infra*, pp. 8-10, that Plaintiff was treated, and was treated often. Accordingly, the undersigned recommends that summary judgment be granted in favor of Defendant Little.

---

[2]Defendant C. Reddix has clarified that he is in fact the managing member of Health Assurance, not the Chief Executive Officer as Plaintiff alleged. Docket No. 47-6.

E. DEFENDANTS MICHAEL REDDIX AND CARL FAULKS

Defendants M. Reddix and Faulks, both medical doctors, did prescribe Plaintiff varying amounts of Neurontin. The medical records reflect, *inter alia*, the following with respect to Neurontin prescriptions[3] by these two defendants and dosages from December of 2011, nearly a year prior to suit being filed, through March of 2013, when the Court held the omnibus hearing:

12/15/2011 Dr. Faulks ordered 1600 mg of Neurontin[4] to be taken twice a day, for a total daily dosage of 3200 mg.

2/28/2012 Dr. Faulks ordered 1600 mg of Neurontin to be taken twice a day, for a total daily dosage of 3200 mg.

5/15/2012 Dr. Faulks ordered 800 mg of Neurontin to be taken two times a day, for a total daily dosage of 1600 mg.

7/16/2012 Dr. Michael Reddix prescribed Neurontin, 800 mg to be taken twice a day, for a total of 1600 mg daily.

8/09/2012 Dr. Faulks saw Plaintiff, who reported a concern about the decrease in his Neurontin and stated that it was not sufficient to stop his nerve pain. Dr. Faulks concluded that the maximum dosage that he would prescribe was 800 mg twice a day, for a total daily dosage of 1600 mg. Dr. Faulks noted that Plaintiff was "malingering...to obtain pain medication," and

---

[3]The medical records provided by Defendants reflect that Plaintiff has received a multitude of other medical services while incarcerated which are not detailed herein such as psychiatric care and dental care. Plaintiff has also received treatment and/or medication for various illnesses and conditions such as shoulder pain, skin lesions, arthritis, and sleep apnea, among others. Docket No. 47-2 at 4-5, 13; Docket No. 47-3 at 4, 8, 11, 13; Docket No. 47-4 at 4, 6, 8, 10, 12; Docket No. 47-5 at 3, 17, 21, 23.

[4]Dr. Faulks prescribed Gabapentin. Neurontin is a brand containing Gabapentin.

referred Plaintiff Burgess to Dr. Michael Reddix for pain management.

8/12/2012 Dr. Michael Reddix continued Neurontin at 800 mg, twice a day, for a total daily dosage of 1600 mg.

10/09/2012 Dr. Faulks renewed Plaintiff Burgess' Neurontin prescription at 800 mg, twice a day, for a total daily dosage of 1600 mg.

Docket No. 47-2 at 4-5, 8-9, 10, 14; Docket No. 47-3 at 4-5; Docket No. 47-4 at 2.

Plaintiff's entire history regarding Neurontin during the relevant period, however, is as follows:

12/21/2010 Dr. Abangan ordered the first Neurontin prescription of 300 mg, to be taken twice a day, for a total daily dosage of 600 mg.

1/03/2011 Dr. Abangan increased the dosage to 600 mg twice a day, for a total daily dosage of 1200 mg, in response to Plaintiff's complaint that he continued to have some radicular pain.

1/24/2011 Plaintiff Burgess sent a written request to Dr. Abangan requesting that his dosage be increased because the pain in his back, hips and left leg returns 3½ to 4 hours after taking his Neurontin.

1/26/2011 Dr. Abangan maintained the dosage at 600 mg twice a day, for a total daily dosage of 1200 mg.

2/07/2011 Plaintiff Burgess again asked that his dosage of Neurontin be increased. Dr. Abangan increased his dosage to 800 mg twice a day, for a total daily dosage of 1600 mg.

3/18/2011 Dr. Fisher increased the Neurontin dosage to 1200 mg twice a day, for a total daily dosage of 2400 mg.

9/03/2011 Dr. Zvi Marom increased the dosage of Neurontin to 1600 mg twice a day, for a total daily dosage of 3200 mg.

12/15/2011 Dr. Faulks prescribed a Neurontin dosage of 1600 mg twice a day, for a total daily dosage of 3200 mg.

2/28/2012 Dr. Faulks renewed Neurontin ,1600 mg, twice a day, for a total daily dosage of 3200 mg.

5/15/2012 Dr. Faulks renewed the prescription for Neurontin but reduced the dosage to 800 mg, twice a day, for a total daily dosage of 1600 mg.[5]

5/22/2012 Plaintiff Burgess asked to be referred to a qualified physician to determine the appropriate dosage for his Neurontin.

7/16/2012 Dr. Michael Reddix, to whom Plaintiff was referred by Dr. Faulks, ordered Neurontin 800 mg, twice a day, for a total daily dosage of 1600 mg.

8/09/2012 Dr. Faulks examined Plaintiff Burgess in response to his concern about the decrease in his Neurontin dosage. Dr. Faulks continued the Neurontin prescription at 800 mg twice a day, for a total daily dosage of 1600 mg, and again referred Plaintiff Burgess to Dr. Michael Reddix. Dr. Faulks noted his opinion that Plaintiff was malingering to obtain pain medication.

8/12/2012 Dr. Michael Reddix continued the Neurontin prescription at 800 mg, twice a day, for a total daily dosage of 1600 mg.

10/09/2012 Dr. Faulks renewed all of Plaintiff Burgess' medications, including

[5]Plaintiff was also prescribed 800 mg of ibuprofen twice daily, among other medications. Docket No. 47-2 at 10.

Neurontin at 800 mg, twice a day, for a total daily dosage of 1600 mg.

11/24/2012 Dr. R. Reeves, psychiatrist, found that Neurontin was not appropriate for Plaintiff's mental health issues, but noted that it might be prescribed by the medical professionals if they felt it was truly indicated. Dr. Reeves concluded that Plaintiff appeared to be "drug seeking."

01/22/2013 Dr. McShan prescribed Neurontin at 300 mg per day, for a total daily dosage of 300 mg until Plaintiff's records from Texas could be obtained and reviewed concerning his pinched sciatic nerve.

2/09/2013 Dr. Reeves, psychiatrist, saw Plaintiff, who demanded Neurontin. Dr. Reeves found that Plaintiff was fixated on receiving Neurontin and was somewhat manipulative.

3/26/2013 Dr. McShan examined Plaintiff Burgess and increased his Neurontin dosage to 800 mg twice a day for a total daily dosage of 1600 mg.

Docket Nos. 47-2; 47-3; 47-4; 47-5 .

Reviewing the entire relevant history with respect to Plaintiff's Neurontin usage in context shows both that Plaintiff was receiving medical treatment and that there were objective reasons for Defendants M. Reddix and Faulks not to prescribe the 3200 mg of Neurontin Plaintiff demanded. Given the record in this matter, it cannot be said that these Defendants were deliberately indifferent to Plaintiff's serious medical needs.

Though Plaintiff also complains of lapses between prescriptions during which time he was not receiving Neurontin, he testified that he was receiving 800 milligrams of ibuprofen during that time. Docket No. 45-1 at 15-16, 18. The Fifth Circuit recently addressed substitution of ibuprofen for a prescription pain killer and analyzed the claim as follows:

> Turning to the particulars of the deliberate indifference standard, a prison official is deliberately indifferent to a pre-trial detainee's serious medical needs in violation of the Fourteenth Amendment if he (1) was subjectively aware of the risk and (2) disregarded the risk by failing to take reasonable measures to abate it. Because the district court found a genuine dispute of fact with respect to the Defendants' subjective awareness that Burton was in pain despite the ibuprofen he received, we are without power to review that factual determination. Even so, we find that Burton has failed as a matter of law to meet the second prong of the deliberate indifference standard, which requires a showing that the official "disregard[ed] [the] risk by failing to take reasonable measures to abate it." To impose liability, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."' Thus,"prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Moreover, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances," and we have previously found that "the decision whether to provide additional treatment 'is a classic example of medical judgment.'" Here, the evidence in the record, even when viewed in Burton's favor, fails as a matter of law to demonstrate that the Defendants disregarded the risk by failing to take reasonable steps to abate it. Burton has presented no evidence that 800 milligrams of ibuprofen-the prescription-strength medication he received-was less effective than Percocet in dealing with the type of pain he was experiencing. Although this Circuit and others have found that a prison official who refused to provide an inmate with *any* pain treatment, and thus ignored the inmate's complaints of pain, may have acted with deliberate indifference, this is not such a case. This case involves substitution of one prescription pain medication-800 milligrams of ibuprofen-for another-Percocet. With no evidence that such a substitution was unreasonable, we cannot find that the Defendants' actions amounted to a failure to take reasonable measures to abate Burton's pain. Whether the Defendants were responsive to or disregarded Burton's complaints likely depends at least in part on the severity of his gunshot wound and the comparative abilities of ibuprofen and Percocet to manage pain; Burton has not offered evidence as to either of those issues. Therefore, we find the Defendants are entitled to qualified immunity as a matter of law, even when the evidence is viewed in Burton's favor.

*Burton v. Owens*, 511 Fed. Appx. 385, 389-390 (5th Cir. 2013)(emphasis in original, footnotes

omitted).[6] Plaintiff's claims against Defendant M. Reddix and Defendant Faulks do not meet the standard described in the *Burton* case, and just as that Court determined, this Court cannot say that these defendants failed to take reasonable measures to abate Plaintiff's alleged pain.[7] The complaint against Defendants M. Reddix and Faulks should be dismissed.

F. DEFENDANT BIRDTAIL

Though Defendant Birdtail filed a motion to dismiss pursuant to 42 U.S.C. § 1997e(c), the Court has considered matters outside the pleadings and therefore procedurally the motion is converted to one for summary judgment. Fed. R. Civ. P. 12(d). Citing Fifth Circuit precedent and a prior opinion of this Court, Defendant Birdtail argues that Plaintiff has no constitutional right to a grievance procedure and consequently no constitutionally protected due process interest at issue.

During the omnibus hearing, Plaintiff stated that he was making a claim against Defendant Birdtail, "[t]he ARP coordinator at the time" he filed or attempted to file grievances. Docket No. 45-1 at 33. Part of Plaintiff's dissatisfaction with the ARP process is that a number

[6]Though the *Burton* case concerned the right to medical treatment of a pre-trial detainee as opposed to a convicted inmate, the standard is the same. *Burton*, 511 Fed. Appx. at 387, n.3.

[7]Plaintiff also alleged during the omnibus hearing that his request to see a specialist for his lung disease was denied. Docket No. 45-1 at 25. However, Plaintiff testified that he had not exhausted administrative remedies as to that claim at the time of the hearing. *Id.* at 26. Administrative exhaustion is required before Plaintiff may proceed with a claim in this Court. 42 U.S.C. § 1997e. The relevant portion of 42 U.S.C. § 1997e states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

of his grievances were not considered because he sought the same relief time after time, though he tried to add new facts and complain about additional personnel. *Id.* at 24, 34. In his complaint, Plaintiff alleged that the grievance procedure was a "joke" and that it failed to correct the wrongs of which he complained in his grievances. Docket No. 1-1 at 6.

Precedent dictates that Plaintiff's claim concerning the grievance procedure be dismissed. In the *Geiger* case, the plaintiff made allegations similar to those made by the plaintiff in the case *sub judice*. The Fifth Circuit held:

> Geiger also alleged that prison officials failed properly to investigate his grievances and letters complaining about the conduct of the mail room and security staff. Insofar as he seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous. "[A] prisoner has a liberty interest only in 'freedom[s] from restraint ... impos[ing] *atypical* and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)(emphasis in original, footnotes omitted).

The *Adams* case is also instructive:

> Plaintiff's claims that the Defendants failed to follow MDOC policies and procedures with respect to the ARP does not rise to the level of a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir.1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation); *McGowan v. Peel*, No. 3:06cv659-DPJ–JCS, 2007 WL 710154, at *1–*2 (S.D. Miss. March 6, 2007). Plaintiff has no constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374–75 (5th Cir.2005); *Jones v. Shabazz*, No. H–06–1119, 2007 WL 2873042,

at *21 (E.D.Tex. Sept. 28, 2007).

*Adams v. Epps*, 2012 WL 1314092 at *4 (S.D. Miss. March 20, 2012). Plaintiff has no claim against Defendant Birdtail based on the grievance procedure and the complaint should be dismissed as to Defendant Birdtail.

G. PLAINTIFF'S MOTIONS TO AMEND

Plaintiff's motion at Docket No. 42 to amend his complaint to add another defendant also relates to the grievance procedure. Plaintiff seeks to add another ARP coordinator, Joyce Graham, as a defendant. The motion was filed well after the omnibus hearing in this matter and after two defendants had already filed motions for summary judgment. All defendants now have pending motions for summary judgment. Plaintiff's motion is too late. Moreover, Plaintiff's latest proposed amendment would be futile for the same reason his claims against Defendant Birdtail fail. Plaintiff makes no allegations against Ms. Graham other than that she was responsible for "providing the Plaintiff proper M.D.O.C. Grievance Procedures." Docket No. 42 at 2. Plaintiff's proposed amendment fails to state a claim against Ms. Graham and is denied. *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000)("It is within the district court's discretion to deny a motion to amend if it is futile.").

Plaintiff's motion for leave to amend at Docket No. 54 pertains to allegations of mail tampering and other issues not before the Court in this case and is therefore denied.

H. DEFENDANTS' MOTION TO STRIKE

Well after all Defendants had moved for summary judgment, and without leave of the Court, Plaintiff served Defendants with requests for production of documents. Docket No. 50-1. Defendants Faulks, Little, C. Reddix and M. Reddix moved to strike the requests. Docket No.

50. Plaintiff had already been provided a copy of his medical records which contain the information relevant to his claims regarding a denial of medical attention. Docket No. 44. Plaintiff's requests are untimely, and the majority of the requests seek documents to which Plaintiff would not be entitled, such as the medical records of other inmates. Moreover, the Court instructed Plaintiff that if his claims survived motions for summary judgment, the Court would consider allowing the additional discovery Plaintiff referenced concerning the backgrounds of the defendants. Docket No. 45-1 at 41. However, since Plaintiff's claims fail even taking all his allegations as true, delving into the background of the defendants would not aid Plaintiff's case. Finally, Plaintiff did not argue in response to any of the motions for summary judgment that he needed any additional discovery to respond to any of the motions. Accordingly, Defendants' Motion to Strike [Docket No. 50] is granted.

## CONCLUSION

Based on the foregoing, the undersigned recommends that the complaint be dismissed in its entirely and judgment be granted in favor of all Defendants.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636(b)(1).

RESPECTFULLY SUBMITTED, this the 12th day of September, 2013.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE